# ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,   : | |
| : | |
| Plaintiff,   : | **Civil Action** |
| : | **File No.** |
| v.   : | |
| **1: 04-CV 2933** | |
| MARKET-TIMING TECHNOLOGIES, LLC and   : | |
| DAVID A. PERRY,   : | **TWT** |
| : | |
| Defendants.   : | |

## COMPLAINT FOR RELIEF

The Securities and Exchange Commission ("Commission") files this Complaint for Relief and alleges as follows:

## INTRODUCTION

1      From at least November 2002 to September 2004, Market-Timing Technologies, LLC ("Market-Timing"), an investment adviser registered with the Commission, and David A Perry, its president, have actively solicited investment advisory clients through materially false advertising materials  They recruited these clients through internet websites that advertise eight different asset management programs.  Market-Timing currently has approximately $40 million of assets under

management enrolled in these programs.

     2.      Each program purportedly uses a model that, based on short term market trends, identifies when Market-Timing and Perry should shift clients` investments among various mutual funds  The websites represented that Market-Timing has used the models for several years, and that since their inception, the models have produced average annual returns ranging between 9% and 91 4%.

     3      The websites failed to disclose, however, that these return rates are based primarily on hypothetical investments, rather than actual results  In fact, Market-Timing's earliest use of any of the models was November 2002.

     4.      Market-Timing has failed to maintain records required by the Investment Advisers Act of 1940 ("Advisers Act") for investment advisers registered with the Commission

     5      In addition, during a recent examination by the staff of the Securities and Exchange Commission, Perry refused to produce documentation substantiating the accuracy of the performance representations in the websites, even though the Advisers Act laws requires him to provide such documents to the Commission staff

     6      As a result of their conduct, Market-Timing and Perry have engaged in, and unless restrained and enjoined by this Court, will continue to engage in, acts

and practices that violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S C §§ 78j(b)] and Rule 10b-5 thereunder [17 C F.R. §§ 240 10b-5], and Market-Timing has engaged in, and Perry has aided and abetted, violations of Sections 204 and 206(1), (2) and (4) of the Advisers Act [15 U.S.C. §§ 80b-4 and 80b-6(1), (2) and (4)] and Rules 204-2(a)(2), 204-2(a)(7), 204-2(a)(16) and 206(4)-1(a)(5) thereunder [17 C F R §§ 275 204-2(a)(2), 204-2(a)(7), 204-2(a)(16) and 206(4)-1(a)(5)]

## JURISDICTION AND VENUE

7      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U S.C. §§ 78u(d), 78u(e) and 78aa] and Section 209(d) of the Advisers Act [15 U S C § 80b-9]

8      Venue is proper in this district pursuant to 28 U S.C § 1391(b)(1) and (2), Section 27 of the Exchange Act [15 U.S C. § 78aa]; and Section 214 of the Advisers Act. Certain of the actions set forth herein occurred within this district and defendants reside and do business in this district

9      Market-Timing and Perry, directly and indirectly, have made use of the mails and the means and instrumentalities of interstate commerce, in connection with the transactions, acts, practices and courses of business alleged in this

3

Complaint.

## DEFENDANTS

10.    Market-Timing Technologies, LLC is a Georgia Limited Liability Company based in Atlanta. It was formed in 2001 and has operated as an investment adviser since it began managing money in approximately November 2002   Market-Timing has been registered with the Commission since February 6, 2004   Market-Timing has approximately 339 customers and manages approximately $40 million

11.    David A  Perry is 47 years of age and resides in Atlanta, Georgia.  He is the president of Market-Timing.  Perry devised the internet websites for Market-Timing that are at issue in this litigation.

## FACTS

### A.    Market-Timing's Asset Management Programs

12.    From at least late 2002 to September 2004, Market-Timing and Perry advertised and offered eight asset management programs through three websites. Perry created the websites, which are located at  www index-timing.com, www.nasdaq-timing com, and www.sector-timing com.  According to the index-timing and Nasdaq-timing websites, the programs are based upon proprietary models that identify profit opportunities by trading between various mutual funds   The

4

sector-timing website advertises an asset allocations program where funds are shifted between mutual funds in a mutual fund family. The trading opportunities purportedly occur when there are fluctuations in particular markets.

13.    Each of these websites was an advertisement, as that term is defined by the Advisers Act, because it was a communication addressed to more than one person that offered advisory services regarding securities.

14    The Market-Timing websites directed interested investors to open a mutual fund account with one of two investment companies, ProFunds or Rydex, and grant Market-Timing management authority over that account.  Market-Timing's websites also directed the investor to execute an investment advisory agreement, which provided Market-Timing with a quarterly advisory fee   The fee was expressed as a percentage of assets in the client's account, and the percentage decreased as the size of the account increases.

15    Once the investor opened an account and granted Market-Timing management authority, Market-Timing periodically shifted the client's money among various mutual funds within the fund family, as dictated by the particular model

(i)    *The Nasdaq-Timing Asset Management Program*

16.    Market-Timing's "Nasdaq-Timing com" website claimed that the

5

Nasdaq-timing program shifts investors' money between two index funds offered by ProFunds, the Long OTC Fund and the Short OTC Fund.

17    According to this website, Market-Timing shifts investors into the long fund when the Nasdaq-timing model predicts favorable market trends, and the short fund when the model projects downward market trends

18    This program began operation in August 2004 and already has approximately $18 to $20 million in assets under management. Most of these funds came from investors previously enrolled in one of Market-Timing's other asset management programs

19.    This website advertised an average annual return of 69.3% for the time period of January 1, 1997 through July 31, 2004, but did not disclose adequately that no actual assets were invested in the program during that period. Market-Timing did not invest any funds in this program until August 3, 2004

(ii)    The "Index-Timing" Asset Management Program

20.    Market-Timing's "Index-Timing com" website claims that the model for the index-trading program uses a mathematical probability analysis to determine when to shift the client's money among four different index mutual funds offered by ProFunds: (1) the OTC Fund, (2) the Bull Fund, (3) the Short

6

OTC Fund; and (4) the Bear Fund

21.     The Index-Timing model purportedly selects the OTC Fund and the Bull Fund when it identifies upwardly-trending market conditions, and selects the Short OTC Fund and the Bear Fund when it predicts downward trends in the market

22      Market-Timing has approximately $12 million dollars under management in this program

23      The "Index-Timing.com" website contained charts and graphs representing that the model produced an average annual return of 41.4% and a compounded return of 413% between January 1, 2000 and July 1, 2004.

24      The website contained "historical trading tables" for the program, which purportedly reflected changes in the program's trading position (i e. long to short) since January 5, 2000 and the resulting compound gains   According to these tables, the Index Timing model produced a 413 percent return from January 5, 2000 to July 1, 2004.

25      This website failed to disclose that these returns are hypothetical and not based on actual historical performance   Market-Timing only began investing pursuant to this model on November 18, 2002

26     During the time that Market-Timing and Perry have actually managed client assets in the Index-timing program, the program has produced an actual annualized return of 24%, a substantially lower annual rate of return than the return that was advertised on the company's website.

> (iii)    *The Three Sector-Timing and Three Ultra Sector-Timing Asset Management Programs*

27     Market-Timing's "Sector-Timing com" website offered three trading programs that invest in various sector funds offered by Rydex Funds.

28.    Each quarter, the model purportedly identifies the sector funds with the highest performance over the last three months and automatically shifts investors into those funds.

29.    The investor can choose between three sector programs, denoted as Sector-3, Sector-5 and Sector-8.  These sector programs rotate into the top three, five or eight performing sector funds, respectively, for a given quarter.

30     Market-Timing's Sector-Timing website also offered an "Ultra-Sector Timing" program, which has the identical investment strategy as the Sector Timing Program, except that investors rotate into the top three, five or eight sector funds offered by ProFunds, rather than Rydex

31     Combined, Market-Timing has approximately $6 3 million dollars

8

under management in the Sector and Ultra-Sector programs

32.     The sector-timing website contained a bar graph showing purported cumulative returns ranging from 67.6% for the S-8 program and 133 9% for the S-3 program from June 1998 through June 2004

33     The sector-timing website did not disclose adequately that its advertised returns were hypothetical, as no funds were invested in that program until some time in 2003

      *(iv)     The Disclaimer*

34.     The website for each trading program contains a linked to a disclaimer, generic for all of the programs.  The disclaimer stated, in pertinent part.

> Some of these model results are based on back-testing  As such, they are hypothetical and may not reflect the impact that material economic and market factors might have had on actual trade performance

35     In fact, all of the performance graphs in the websites were based largely upon hypothetical data prior to the operations of the respective programs.

36     There was no disclosure regarding when actual assets were first used in any of the programs and no disclosure of the effects of advisory fees or market conditions, beyond an acknowledgment that such effects exist.

**B.**    **Market-Timing Fails to Maintain and or Produce Required Records**

37    Between August 23 and 26, 2004, the examination staff of the Commission examined Market-Timing's offices.

38    During that examination, the Commission staff asked Perry to provide documentation confirming that the models generated the purported performance for each program.

39    Perry claimed that such models existed, but declined to produce documentation sufficient to demonstrate the accuracy of his performance representations

40    Market-Timing also failed to maintain other records required by the Advisers Act, such as ledgers reflecting its assets, liabilities and other accounts, and copies of all written communications to customers.

## COUNT ONE- FRAUD

## Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

41    Paragraphs 1 through 40 are hereby realleged and are incorporated herein by reference.

42    Defendants Market-Timing and Perry, in connection with the purchase or sale of securities described herein, by use of the means and instrumentalities of

interstate commerce and by use of the mails, directly or indirectly:

        a)     employed devices, schemes, or artifices to defraud,

        b)     made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

        c)     engaged in acts, practices, or courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities.

43.    Defendants Market-Timing and Perry knowingly, intentionally and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business  In engaging in such conduct, the Defendants acted with scienter, that is, with and intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

44.    By reason of the foregoing, Defendants Market-Timing and Perry violated, and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S C. § 78j(a)(2)] and Rule 10b-5 thereunder [17 C F.R. § 240 10b-5].

## COUNT TWO- FRAUD

### Violations of Section 206(1) of the Advisers Act
### [15 U.S.C. § 80b-6(1)]

45.    Paragraphs 1 through 40 are hereby realleged and are incorporated herein by reference

46.    Defendant Market-Timing, acting as an investment adviser, by use of the mails and the means and instrumentalities of interstate commerce, directly or indirectly, employed devices, schemes, and artifices to defraud one or more advisory clients and/or prospective clients, all as more particularly described above

47.    Defendant Market-Timing knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud   In engaging in such conduct, Defendant Market-Timing acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

48.    By reason of the foregoing, Defendant Market-Timing violated, and, unless restrained and enjoined, will continue to violate Section 206(1) of the Advisers Act [15 U S C. § 80b-6(1)].

12

## COUNT THREE - AIDING AND ABETTING FRAUD

### Aiding and Abetting Market-Timing's Violations of Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)]

49    Paragraphs 1 through 40 are hereby alleged and are incorporated herein by reference

50.    Defendant Perry knowingly, intentionally, and/or recklessly provided substantial assistance to Market-Timing's violations of Section 206(1) of the Advisers Act   While providing such assistance, defendant Perry acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard of the truth

51    By reason of the foregoing, defendant Perry, directly and indirectly, aided and abetted, and unless enjoined will continue to aid and abet, violations of Section 206(1) of the Advisers Act [15 U.S C. § 80b-6(1)]

## COUNT FOUR - FRAUD

### Violations of Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)]

52    Paragraphs 1 through 40 are hereby realleged and are incorporated herein by reference

53.    Defendant Market-Timing, acting as an investment adviser, by the use

13

of the mails and the means and instrumentalities of interstate commerce, directly and indirectly, engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit on one or more advisory clients and/or prospective clients.

54.     By reason of the foregoing, Market-Timing violated, and, unless restrained and enjoined, will continue to violate Section 206(2) of the Advisers Act [15 U S.C. § 80b-6(2)]

## COUNT FIVE - AIDING AND ABETTING FRAUD

### Aiding and Abetting Market-Timing's  Violations of Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)]

55     Paragraphs 1 through 40 are hereby alleged and are incorporated herein by reference.

56.     Defendant Perry knowingly, intentionally, and/or recklessly provided substantial assistance to Market-Timing's violations of Section 206(2) of the Advisers Act   While providing such assistance, defendant Perry acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard of the truth

57.     By reason of the foregoing, defendant Perry, directly and indirectly, aided and abetted, and unless enjoined will continue to aid and abet, violations of

14

Section 206(2) of the Advisers Act [15 U S C  § 80b-6(2)].

## COUNT SIX - FRAUD

### Violations of Section 206(4) of the Advisers Act
### [15 U.S.C. § 80b-6(4)] and Rule 206(4)-1(a)(5) thereunder
### [17 C.F.R. § 275.206(4)-1(a)(5)]

58    Paragraphs 1 through 40 are hereby realleged and are incorporated herein by reference.

59.    Defendant Market-Timing, acting as an investment adviser, directly or indirectly, published, circulated or distributed advertisements which contained untrue statements of material facts or which were otherwise false or misleading.

60    By reason of the foregoing, Defendant Market-Timing violated, and, unless restrained and enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S C  § 80b-6(4)] and Rule 206(4)-1(a)(5) thereunder [17 C.F.R § 275.206(4)-1(a)(5)]

## COUNT SEVEN - AIDING AND ABETTING FRAUD

### Aiding and Abetting Market-Timing's Violations of Section 206(4) of the
### Advisers Act [15 U.S.C. § 80b-6(4)]

61    Paragraphs 1 through 40 are hereby alleged and are incorporated herein by reference.

15

62      Defendant Perry knowingly, intentionally, and/or recklessly provided substantial assistance to Market-Timing's violations of Section 206(4) of the Advisers Act and Rule 206(4)-1(a)(5) thereunder [17 C F.R § 275.206(4)-1(a)(5)]

63      While providing such assistance, defendant Perry acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard of the truth.

64      By reason of the foregoing, defendant Perry, directly and indirectly, aided and abetted, and unless enjoined will continue to aid and abet, violations of Section 206(4) of the Advisers Act [15 U S C § 80b-6(4)] and Rule 206(4)-1(a)(5) thereunder [17 C.F.R. § 275 206(4)-1(a)(5)]

## COUNT EIGHT-BOOKS AND RECORDS

### Violations of Section 204 of the Advisers Act
### [15 U.S.C. § 80b-4] and Rules 204-2(a)(2), 204(a)(7) and 204-2(a)(16) thereunder [17 C.F.R. §§ 275.204-2(a)(2), 275.204-2(a)(7) and 275.204-2(a)(16)]

65      Paragraphs 1 through 40 are hereby realleged and are incorporated herein by reference.

66      Section 204 of the Advisers Act [15 U S.C § 80b-4] requires an investment adviser registered with the Commission to make and keep true, accurate and complete copies of certain books and records as prescribed by the Commission,

and provides that such records are subject at any time to reasonable periodic, special or other examinations by representatives of the Commission.

67     Rule 204-2(a)(2) of the Advisers Act [17 C F R § 275.204-2(a)(2)] requires investment advisers registered with the Commission to make and keep general and auxiliary ledgers (or other comparable records) reflecting assets, liabilities, reserves, capital income and expense accounts

68     Rule 204-2(a)(7) of the Advisers Act [17 C F R. § 275.204-2(a)(7)] requires investment advisers registered with the Commission to maintain copies of written communications to customers.

69     Rule 204-2(a)(16) of the Advisers Act [17 C F R § 275.204-2(a)(16)] requires that investment advisers who are registered with the Commission and that advertise performance rates of return to maintain and produce sufficient records to demonstrate the calculation of the claimed rate.

70     By failing to maintain and/or produce such records to the Commission staff, Defendant Market-Timing violated and, unless restrained and enjoined, will continue to violate Section 204 of the Advisers Act [15 U S C. § 80b-4] and Rules 204-2(a)(2), 204-2(a)(7) and 204-2(a)(16) thereunder

## COUNT NINE - AIDING AND ABETTING BOOKS AND RECORDS

### Aiding and Abetting Market-Timing's Violations of
### Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and
### Rules 204-2(a)(2), 204(a)(7) and 204-2(a)(16)  thereunder
### [17 C.F.R. §§ 275.204-2(a)(2), 275.204-2(a)(7) and 275.204-2(a)(16)]

71      Paragraphs 1 through 40 are hereby realleged and are incorporated herein by reference

72      Defendant Perry knowingly, intentionally, and/or recklessly provided substantial assistance to Market-Timing's violations of Section 204 of the Advisers Act [15 U S.C. § 80b-4] and Rules 204-2(a)(2), 204(a)(7) and 204-2(a)(16) thereunder [17 C F R  §§ 275 204-2(a)(2), 275 204-2(a)(7) and 275.204-2(a)(16)]

73      By reason of the foregoing, defendant Perry, directly and indirectly, aided and abetted, and unless enjoined will continue to aid and abet, violations of Section 204 of the Advisers Act [15 U.S C. § 80b-4] and Rules 204-2(a)(2), 204(a)(7) and 204-2(a)(16) thereunder [17 C F.R. §§ 275 204-2(a)(2), 275.204-2(a)(7) and 275 204-2(a)(16)].

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Commission, respectfully prays that the Court

I

Make findings of fact and conclusions of law in accordance with Rule 52 of

the Federal Rules of Civil Procedure

## II.

Issue a permanent injunction enjoining defendant Market-Timing and its agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, and each of them·

a      from violating Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C F.R. § 240 10b-5],

b.      from violating Sections 206(1), (2) and (4) of the Advisers Act [15 U S C § § 80b-6(1), (2) and (4)] and Rule 206(4)-1(a)(5) thereunder [17 C.F R § 275 206(4)-1(a)(5)], and

c.      from violating Section 204 of the Advisers Act [15 U S C § 80b-6(4)] and Rules 204-2(a)(2), 204-2(a)(7) and 204-2(a)(16) thereunder [17 C F R. §§ 275 204-2(a)(2), 275 204-2(a)(7) and 275 204-2(a)(16)].

## III

Issue a permanent injunction enjoining defendant Perry and his agents, servants, employees, attorneys, and all persons in active concert or participation with him who receive actual notice of the order by personal service or otherwise, and each

of them

    a       from violating Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C F R § 240.10b-5];

    b       from aiding and abetting violations of Sections 206(1), (2) and (4) of the Advisers Act [15 U.S.C § § 80b-6(1), (2) and (4)] and Rule 206(4)-1(a)(5) thereunder [17 C.F R § 275.206(4)-1(a)(5)]; and

    c.      from aiding and abetting violations of Section 204 of the Advisers Act [15 U S C § 80b-4] and Rules 204-2(a)(2), 204-2(a)(7) and 204-2(a)(16) thereunder [17 C F R §§ 275 204-2(a)(2), 275.204-2(a)(7) and 275 204-2(a)(16)].

## IV

Issue an Order requiring defendants Market-Timing and Perry to disgorge any ill-gotten gains as a result of the conduct alleged in the Commission's Complaint, plus pay prejudgment interest thereon

## V.

Issue an Order requiring defendants Market-Timing and Perry, pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C § 78u(d)(3)] and Section 209 of the Advisers Act, to pay civil monetary penalties

VI.

Issue an Order that retains jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may have been entered or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court

VII

Grant such other and further relief as may be necessary and appropriate

Dated: October 6, 2004

RESPECTFULLY SUBMITTED,

William P. Hicks
District Trial Counsel
Ga. Bar No. 351649

M. Graham Loomis
Senior Trial Counsel
Ga Bar No. 457868

Edward H. Saunders
Staff Attorney
Ga Bar No. 627076

COUNSEL FOR PLAINTIFF
U. S SECURITIES AND EXCHANGE COMMISSION

21

3475 Lenox Road, N.E , Suite 1000
Atlanta, Georgia 30326-1234
(404) 842-7600
(404) 842-7679 fax